ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| NIXON PLAISIR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 310-008 |
| | ) | |
| WALT WELLS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate currently incarcerated at McRae Correctional Facility ("McRae") in McRae, Georgia, has commenced the above-captioned case pursuant to 28 U.S.C. § 2241 contesting, among other things, the execution of his sentence of confinement. Petitioner has also filed a supplement to his petition. (Doc. no. 5.) Respondent has filed a response to the original petition and the supplement. (Doc. nos. 6, 7.) Petitioner then filed a reply brief. (Doc. no. 8.) For the reasons stated more fully below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Wells.

I.  **BACKGROUND**

   A.  **Procedural Background**

Petitioner is incarcerated pursuant to his conviction in the United States District Court for the Western District of Virginia, for his violation of 18 U.S.C. §§ 846 & 841(A)(1), conspiracy to possess with intent to distribute cocaine. (Doc. no. 8, p. 2; doc. no. 6, Ex. 1.)

He is scheduled for release on October 28, 2012, via good conduct time release. (Doc. no. 6, Ex. 1.) Petitioner filed this § 2241 petition contending that after being found guilty by a disciplinary hearing officer ("DHO") of striking a correctional officer with a bag of food, he was impermissibly deprived of twenty-seven (27) days of good conduct time ("GCT"), was given thirty (30) days of disciplinary segregation, and was deprived of his telephone privileges for ninety (90) days. (See generally doc. no. 1.) Petitioner claims in his petition that the disciplinary procedures violated his due process rights because he was denied the opportunity to review the surveillance tape of the incident in question. (Id.)

The Court directed service to be effected on Respondent and instructed Respondent to show cause why Petitioner's writ should not be granted by filing a response within twenty (20) days of the date of service. (Doc. no. 3.) Respondent contends that Petitioner was afforded due process with respect to his disciplinary hearing. (See generally doc. nos. 6,7.)

### B.    Disciplinary Charges and Proceedings

Respondent provides that on May 13, 2009, Petitioner, carrying a bag of food, approached Corrections Officer R. Folk ("CO Folk") at the F-Pod door. (Doc. no. 6, p. 6 and Ex. 5.) Respondent further provides that when CO Folk opened the door, Petitioner stated to the officer that "this is the same thing I had yesterday," and threw the bag of food at the officer, striking him in the left leg. (Id. at p. 6; Ex. 2, Cameron Decl. ¶ 6; Exs. 4, 5.) Petitioner maintains that he did not throw the bag of food at CO Folk. (Id., Ex. 5.) Rather, according to Petitioner, when he received the bag of food, he looked inside and noticed that he had been provided the wrong food. (Id.) Petitioner states that he then went over to CO Folk, informed him of the mistake, and requested that he be provided with the proper food.

2

(Id.) According to Petitioner, CO Folk said "no" to Petitioner, and then called his captain over the radio. (Id.) When Captain Green arrived, he asked Petitioner if he had thrown the bag of food at CO Folk; Petitioner responded that he had not and then claims that he handed the same bag of food that he had received earlier to Captain Green. (Id.)

According to Respondent, an incident report was prepared on that same day, charging Petitioner with "Assaulting Any Person in violation of Code 224 of the disciplinary regulations." (Id. at 6; Ex. 2, ¶ 7; Ex. 5.) A copy of the incident report was given to Petitioner on that same day. (Id. at 6; Ex. 2, ¶ 7; Ex. 5.)

The next day, on May 14, 2009, an initial investigation into the incident commenced. (Id. at 6.) Also on that day, an investigator assigned to Petitioner's case advised Petitioner of his right to remain silent at all stages of the disciplinary process. (Id.) Petitioner acknowledged that he understood his rights and refused to provide a statement to the investigator. (Id., Ex. 2, ¶ 8 and Ex. 6.) The investigator concluded that there was sufficient evidence to continue processing the incident report and forwarded the report to the Unit Disciplinary Committee ("UDC") for a hearing. (Id., Ex. 2, ¶ 9 and Ex. 7.)

The UDC held a hearing on May 18, 2009, at which Petitioner appeared and provided a statement in his defense. Due to the nature of the allegation against Petitioner, the UDC made no decision and referred the matter for a hearing by a DHO. (Id., Ex. 2, ¶ 10 and Ex. 5.) That Same day, the UDC provided Petitioner with notice of his rights before the DHO, including his right to call witnesses, to present evidence, and to request assistance from a staff representative. (Id., Ex. 6.)

The DHO hearing was conducted on July 6, 2009, and Petitioner chose to exercise

3

his rights. (Id., Ex. 2, ¶¶ 11, 12 and Ex. 4.) At the hearing, Petitioner was also provided an opportunity to make a statement and present documents; his staff representative appeared and provided a statement on his behalf. (Id., Ex. 2, ¶ 13 and Ex. 4.) At the hearing, when asked by the DHO what he did with the bag that was given to him for breakfast on May 13, 2009, Petitioner responded that he gave it to Captain Green. (Id., Ex. 4, § V.) The DHO then asked Petitioner what he told CO Folk when he came to the F-Pod door; Petitioner responded that he asked CO Folk to call the kitchen. (Id.) Petitioner denied having thrown the bag of food at CO Folk. (Id.). His witness, Captain Green, also appeared and gave a statement. (Id.) Captain Green stated that on the date of the alleged incident, Petitioner handed him a food service bag that contained two pieces of bread and two pieces of cheese. (Id.) Captain Green also stated the Petitioner told him that he did not have the "right stuff" in his bag, and so he called CO Folk and told him. (Id.) Captain Green further stated that he was not aware of what happened between CO Folk and Petitioner before he arrived. (Id.) Captain Green stated that he told Petitioner that "if all the rest got cereal he should too." Captain Green then stated that when he learned what occurred between CO Folk and Petitioner, he took Petitioner to the SHU. (Id.) Thereafter, the DHO asked Petitioner "if the bag he gave to Captain Green was the same bag he threw at [CO Folk] or another bag he had picked up? [Petitioner] answered, Same bag." (Id.)

Prior to the DHO hearing, Petitioner had requested that the institution's surveillance tapes be brought to the hearing for him to use as evidence. (Id. at 8.) However, the DHO informed Petitioner that he would not have access to any type of surveillance videos because they are confidential investigative materials, and their release could compromise the safety

4

and security of the facility's operations. (Id., Ex. 2, ¶ 15.) The DHO did not use any video surveillance footage during the hearing. (Id., ¶ 16.)

On July 10, 2009, the DHO issued her written decision. (Id. at Ex. 4.) In making her decision, Respondent explains that the DHO considered the incident report and investigation, the statements of Petitioner, his staff representative, and his witness. (Id., Ex. 2, ¶ 14.) The DHO also considered a staff incident statement from Sergeant William Roberson. (Id.) According to the DHO's Report, she considered the statement of CO Roberson and the incident report by CO Folk, both of which provide that Petitioner threw a bag of food at CO Folk's leg; she also considered the statements of Petitioner and his staff representative that provide that Petitioner did not throw the bag of food at CO Folk. (Id., Ex. 4.) However, upon the greater weight of the evidence, the DHO concluded that Petitioner had committed the prohibited act.

Based on this evidence, the DHO found Petitioner guilty of "Assaulting any Person in violation of Code 224 of the disciplinary regulations" and sanctioned him with a loss of 27 days of GCT, 30 days of disciplinary segregation, and loss of telephone privileges for 90 days. (Id., Ex. 2, ¶ 18.) A copy of the written DHO report was delivered to Petitioner on July 10, 2009. (Id., ¶ 19). With those facts in mind, the Court turns to the merits of the claims raised in the § 2241 petition.

## II. DISCUSSION

### A. Due Process Claim

Petitioner claims that his due process rights were violated during the course of the events described. Specifically, Petitioner argues that the disciplinary procedures violated his due process rights because he was denied the opportunity view the surveillance video of the incident. (See generally doc. no. 1.) On the other hand, Respondent contends that Petitioner received all the rights to which he was entitled, and therefore, he should not be granted relief. (See doc. nos. 6,7.) Respondent has the better argument.

In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. However, a prisoner facing a disciplinary hearing is still entitled to compliance with the following minimum due process protections: (1) written notice of the charges against him at least 24 hours before his hearing; (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in his defense. Id. at 563-67; see also Asad v. Crosby, 158 F. App'x 166, 172-73 (11th Cir. 2005); Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999).

In addition to these procedural due process requirements, the Supreme Court has explained that the degree of proof required at a prison disciplinary hearing to satisfy due process is significantly lower than that required in a criminal prosecution. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court concluded that a finding

that "some evidence" supports the decision of a prison disciplinary board is enough to satisfy the minimum due process requirements for prisoners facing loss of GCT:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. [103,] 106 . . . [(1927)]. Ascertaining whether this standing is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455-56. The Eleventh Circuit has further explained the limited judicial review that federal courts may undertake in reference to prison disciplinary actions:

> The federal courts cannot assume the task of retrying all prison disciplinary disputes. No de novo review of the disciplinary board's factual finding is required, but the courts must consider whether at least the decision is supported by "some facts"--"whether any evidence at all" supports the action taken by prison officials.

Young v. Jones, 37 F.3d 1457, 1460 (11th Cir. 1994) (quoting Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981)).

Here, the Court concludes that the procedural due process requirements were met with respect to Petitioner's disciplinary hearing and that "some evidence" supports the DHO's decision. Indeed, as noted above, on May 13, 2009, Petitioner was provided with a copy of the incident report notifying him of the charges against him. (Doc. no. 6, Exs. 2, 4, 5.) The following day, an investigation into the incident report commenced; Petitioner was advised of his right to, among other things, remain silent. (Id., Exs. 2, 4.) The investigator concluded that there was sufficient evident to continue processing the incident report; as such the incident report was forwarded to the UDC. (Id.) The UDC thereafter referred the matter

7

to the DHO for a hearing that was held on July 6, 2009. (Id.)

Petitioner was also advised of the rights afforded to him at his disciplinary hearing, which included, among other things, his rights to call witnesses and present evidence. Indeed, as noted in the DHO Report, Petitioner chose to exercise these rights and was represented by a staff representative and had a witness testify. (Id.) After Petitioner exercised his rights at the disciplinary hearing, the DHO issued a detailed report explaining the evidence upon which she relied in reaching her decision, as well as her reasons for sanctioning Petitioner with a loss of 27 days of GCT, 30 days of disciplinary segregation, and loss of telephone privileges for 90 days. (Id.) The DHO Report indicates that a copy was delivered to Petitioner on July 10, 2009, and Petitioner does not contest that he received this report. (Id.) Finally, the Court finds that the decision of the DHO is supported by "some evidence." Indeed, the DHO relied on CO Folk's written statement that Petitioner had thrown the bag of food at him, and CO Roberson's written statement that he witnessed Petitioner throw a bag of food at CO Folk's legs. Additionally, the DHO provides that she took into account Petitioner's testimony, but "it was determined that the bag handed to [Captain Green] could have come from any number of food bags present in the pod on the day in question during the lockdown." (Id.)

To the extent Petitioner argues that the disciplinary procedures violated his due process rights because he was denied the opportunity review the surveillance video of the incident, his argument fails. First, the DHO did not rely on the surveillance video in reaching her conclusion that he was guilty of the disciplinary charges. Second, and more importantly, Wolff provides that an inmate facing disciplinary proceedings should be allowed to call

8

witnesses and present documentary evidence in his defense *when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.* Wolff, 418 U.S. at 566 (emphasis added). Here, Respondent maintains that the surveillance videos are considered confidential investigative materials, and release could compromise the safety and security of the facility's operations. (Doc. no. 6, p. 8.)

Furthermore, to the extent Petitioner argues that the surveillance video should have been provided to him pursuant to Brady v. Maryland, 373 U.S. 83 (1963), this argument also fails. Petitioner relies on Brady for the proposition that he is entitled to exculpatory evidence from Respondent, but notably, Brady is a criminal case.[1] As previously mentioned, the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. Indeed, the Eleventh Circuit noted, without deciding the issue, that it has never held that the principles of Brady extend to prison disciplinary hearings. Kenney v. Barron, 239 F. App'x 494, 495 (11th Cir. 2007) (*per curiam*).

Accordingly, the Court finds that Petitioner's claim that he was impermissibly deprived of 27 days of GCT, was impermissibly given 30 days of disciplinary segregation, and was deprived of telephone privileges for 90 days, is without merit and fails to provide a basis for relief.

**B.     Remaining Claim**

To the extent Petitioner alleges an Eight Amendment violation of his rights because

---

[1] The Brady court held that the defendant's due process rights were violated because he was entitled to exculpatory evidence that had been suppressed by the government. Brady, 373 U.S. at 87.

9

of a refusal to provide him with a proper diet (doc. no. 1, p. 3), his allegation fails to provide a basis for relief in this s 2241 habeas proceeding. Notably, the sole function of habeas corpus, "is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose." Cook v. Hanberry, 592 F.2d 248, 249 (5th Cir. 1979), revised by 596 F.2d 658 (5th Cir. 1979).[2] "Habeas corpus is not available to prisoners complaining only of mistreatment during their legal incarceration." Id.

Here, however, the factual allegations raised in the remaining claim regarding Petitioner's diet challenges the conditions, rather than the fact or duration, of Petitioner's confinement. Such allegations may be appropriate in a civil rights complaint, but do not state cognizable grounds for relief in a § 2241 petition. Accordingly, Petitioner's remaining claim should be dismissed for failure to allege grounds on which § 2241 relief may be granted.[3]

---

[2] Notably, in Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

[3] Additionally, even if Petitioner could properly bring a civil rights claim in this § 2241 petition, it is unclear whether he has exhausted his administrative remedies as to his Eighth Amendment claim. The failure of a prisoner to exhaust his administrative remedies prior to filing a complaint or petition in federal court bars a court from granting relief under such a complaint or petition. 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 92 (2006); Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004) (*per curiam*); Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992) (*per curiam*). Moreover, mere perceived futility of exhaustion does not excuse a prisoner from pursuing administrative relief before filing a civil complaint in federal court. E.g., Higginbottom v. Carter, 223 F.3d 1260, 1261 (11th Cir. 2000) (*per curiam*) (stating that "the exhaustion requirement [in a prisoner civil rights case] cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile"); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994) (recognizing exhaustion requirement in relation to bringing § 2241 petition and noting any exception to exhaustion would apply only in "extraordinary circumstances"); cf. Jaimes v. United States, 168 F. App'x 356, 359 (11th Cir. 2006) (*per curiam*) (observing that whether habeas petitioner "may even assert a futility exception to the [exhaustion] requirement is questionable"). Thus, even if Petitioner had brought the instant claim regarding Petitioner's diet in a civil rights complaint or if his claim was cognizable under § 2241, he would not be entitled to relief because of his

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Wells.

SO REPORTED and RECOMMENDED this 30th day of June, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

apparent failure to exhaust his administrative remedies.

 Notably, even if Petitioner had exhausted his administrative remedies before filing under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), he still might not be entitled to relief in federal court. See Alba v. Montford, 517 F.3d 1249, 1254 (11th Cir. 2008) (holding that prisoners in a private federal facility are not entitled to Bivens relief when adequate state remedies are available).

11